# United States Court of Appeals
### For the Eighth Circuit

_____

No. 15-1329

_____

United States of America

*Plaintiff - Appellee*

v.

Richard Gonzalez Alcalde

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Southern District of Iowa - Des Moines

_____

Submitted: March 14, 2016
Filed: April 12, 2016

_____

Before MURPHY, BEAM, and GRUENDER, Circuit Judges.

_____

MURPHY, Circuit Judge.

Richard Gonzalez Alcalde pled guilty to conspiracy to distribute methamphetamine and the district court[1] sentenced him to 188 months imprisonment. Alcalde appeals his sentence, arguing that the court erroneously applied an

_____

[1]The Honorable James E. Gritzner, United States District Judge for the Southern District of Iowa.

aggravating role adjustment under U.S.S.G. § 3B1.1 and miscalculated the drug quantity attributable to him. We affirm.

## I.

Between February and April 2014, Alcalde participated in a conspiracy to distribute methamphetamine with four other individuals. He was indicted and pled guilty to conspiracy to distribute methamphetamine in violation of 21 U.S.C. § 841(a), (b)(1)(A) and 21 U.S.C. § 846. In the plea agreement, the parties stipulated that Alcalde's offense involved at least 1.5 kilograms of actual methamphetamine.

The presentence investigation report recommended that Alcalde receive a three level enhancement because of the managerial role he played in the conspiracy. See U.S.S.G. § 3B1.1(b). The probation office also determined that at least 4.5 kilograms of methamphetamine were attributable to Alcalde. This calculation was based on the quantity of drugs the government seized and could trace to Alcalde as well as the drug quantity equivalent of the cash found in coconspirator houses. The coconspirators had admitted in government interviews that they had collected drug proceeds as part of the underlying conspiracy to distribute methamphetamine. The police had seized $2,380 from one coconspirator's house and $3,592 from another's. In the report, the monetary seizures were converted to 37.49 grams and 56.57 grams, respectively, based on information from Drug Enforcement Administration special agent Lonny Namanny that one ounce or about 28 grams of methamphetamine generally sold for between $1,500 and $1,800.

During the sentencing hearing Alcalde argued that a role enhancement should not be applied and that the drug quantity attributed to him in the presentence investigation report was erroneous. One of Alcalde's coconspirators, Gema Consuelo Gonzalez Alcalde, testified that Alcalde had directed her to obtain Des Moines mailing addresses to receive shipments of actual methamphetamine. He had also

provided her with bank account information so that she and another coconspirator could deposit the drug proceeds. She stated that at least three packages were sent to Iowa from California, and she recalled one instance when Alcalde had instructed her to make a $3,000 deposit into a bank account. Gema also testified that Alcalde would direct her to take photographs of drug packages she received and send the photographs to him via text message.

Namanny testified during the sentencing hearing about statements Alcalde made during his proffer interviews. According to Namanny, Alcalde had admitted to being involved with shipping at least four packages of drugs from California to Des Moines. Alcalde provided this information to Namanny subject to a cooperation agreement under which the government had agreed not to use any self incriminating statements against him, unless he "admit[ted] conduct in a proffer interview or debriefing and then denie[d] the same or present[ed] evidence to the contrary at any hearing subsequent to the signing of th[e] agreement."

The district court found that "considering the entire record" the facts supported applying the sentencing role enhancement under U.S.S.G. § 3B1.1(b) to Alcalde. It also determined that there was sufficient evidence to support the finding that 4.5 kilograms of methamphetamine were attributable to him. The court then calculated the guideline range at 235 to 240 months and sentenced Alcalde to 188 months imprisonment. Alcalde appeals his sentence, arguing that the court misapplied the aggravating role adjustment and miscalculated the drug quantity attributable to him.

## II.

We review the district court's factual findings and its determination of a defendant's role in the offense for clear error. United States v. Callaway, 762 F.3d 754, 759 (8th Cir. 2014); United States v. Gutierrez, 757 F.3d 785, 789 (8th Cir. 2014). Under U.S.S.G. § 3B1.1(b), a defendant's offense level may be increased by

three levels if he was a "manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive." Under the guidelines, we construe the terms "manager" and "supervisor" broadly. United States v. Cole, 657 F.3d 685, 687 (8th Cir. 2011).

To determine whether this enhancement applies, the sentencing court considers factors such as the "exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, . . . the nature and scope of the illegal activity, and the degree of control and authority exercised over others." U.S.S.G. § 3B1.1 cmt. n.4. A role enhancement under § 3B1.1(b) may apply even if the defendant managed only one participant in a single transaction. United States v. Adejumo, 772 F.3d 513, 537–38 (8th Cir. 2014). Here, the record demonstrates that the conspiracy involved five participants and Alcalde directed the actions of two coconspirators by instructing them to deposit drug proceeds and by instructing one of them to send photos of drug packages. The district court therefore did not err by applying a role enhancement under § 3B1.1(b).

Alcalde also argues that the district court clearly erred by attributing to him 4.5 kilograms of actual methamphetamine. He does not dispute that 4.472 kilograms of actual methamphetamine were properly attributed to him, but he argues that the court erred by attributing the additional 28 grams of methamphetamine. Drug quantity determinations are factual findings which we review for clear error. United States v. Colton, 742 F.3d 345, 348 (8th Cir. 2014). A district court's determination will stand "unless the decision is unsupported by substantial evidence, is based on an erroneous view of the applicable law, or in light of the entire record, we are left with a firm and definite conviction that a mistake has been made." Id. (internal quotation marks omitted).

Here, although the court did not specify how it completed its calculation, the record supports at least two different methods of calculating the 4.5 kilograms drug

quantity attributed to Alcalde. First, the court could have converted the drug proceeds that had been found in the coconspirator houses into drug quantities. Under the sentencing guidelines, "[w]here there is no drug seizure or the amount seized does not reflect the scale of the offense, the court shall approximate the quantity of substance." U.S.S.G. § 2D1.1 cmt. n.5. When approximating the total drug quantity, a court may convert drug proceeds into the equivalent drug quantity. See United States v. Carper, 942 F.2d 1298, 1303 (8th Cir. 1991), cert. denied, 502 U.S. 993 (1991). And for sentencing purposes a court may attribute those proceeds to a defendant who "was not directly involved" in the transaction as long as "those dealings were part of the same [underlying] course of conduct or scheme" with which the defendant was involved. Colton, 742 F.3d at 349 (internal quotation marks omitted).

The drug amount seized in this case did not reflect the full scale of the conspiracy because Alcalde admitted to sending more packages than the government had intercepted. The court therefore could have properly attributed to Alcalde up to 94.06 grams for the $5,972 of drug proceeds found in the coconspirator houses because Alcalde was part of the underlying conspiracy to sell methamphetamine. See id. The cash that government officials had found in the coconspirator houses thus could have accounted for the 28 grams which Alcalde contends were erroneously attributed to him.

The record also supports the court's drug quantity finding because it could have attributed to Alcalde the approximate amount of methamphetamine which was in packages he admitted he sent but had not been intercepted by the government. During his proffer interview, Alcalde admitted to managing the shipment of four packages of actual methamphetamine. Two of those packages were intercepted by law enforcement and contained 1,968 grams and 2,363 grams of high purity methamphetamine. We have explained that "[a] sentencing court may estimate a quantity of unrecovered drugs based on known quantities from other similar transactions." United States v. Granados, 202 F.3d 1025, 1029 (8th Cir. 2000). The

district court may therefore have estimated that the other packages Alcalde shipped also contained about 2,000 grams of actual methamphetamine. The estimated quantity of drugs in these other packages thus could have accounted for the additional 28 grams that the district court attributed to Alcalde.

Finally, Alcalde contends that the the government breached his cooperation agreement by offering testimony regarding his proffer statements to support its drug quantity calculation. We review this issue de novo. See United States v. Ozmon, 713 F.3d 474, 476 (8th Cir. 2013). The cooperation agreement generally prohibited the government from using Alcalde's self incriminating statements, but permitted the government to use those statements if he denied a fact which he had previously admitted in his proffer. Alcalde triggered this exception because he denied selling a higher drug quantity despite having previously admitted to selling additional packages of drugs in his proffer. See id. The government thus permissibly used Alcalde's proffer statements.

We conclude that the district court properly applied a role enhancement and correctly calculated the drug quantity attributable to Alcalde. His sentence is therefore affirmed.

_____