14-1665-cr (L)
*United States v. Trincher & Golubchik*

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 31st day of March, two thousand fifteen.

PRESENT: PIERRE N. LEVAL,
        CHESTER J. STRAUB,
        CHRISTOPHER F. DRONEY,
                         *Circuit Judges.*
------------------------------------------------------------------

UNITED STATES OF AMERICA,

               *Appellee*,

           v.                         Nos. 14-1665-cr, 14-1763-cr

ALIMZHAN TOKHTAKHOUNOV, AKA Sealed Defendant 1, AKA Taiwanchik, AKA Alik, MICHAEL SALL, AKA Sealed Defendant 4, STAN GREENBERG, AKA Sealed Defendant 5, AKA Slava, ILLYA TRINCHER, AKA Sealed Defendant 6, HILLEL NAHMAD, AKA Sealed Defendant 7, AKA Helly, JOHN HANSON, AKA Sealed Defendant 8, NOAH SIEGEL, AKA Sealed Defendant 9, AKA The Oracel, JONATHAN HIRSCH, AKA Sealed Defendant 10, ARTHUR AZEN, AKA Sealed Defendant 11, DONALD MCCALMONT, AKA Sealed Defendant 12, DMITRY DRUZHINSKY, AKA Sealed Defendant 13, AKA Dima, AKA Blondie, ALEXANDER ZAVERUKHA, AKA Sealed Defendant 14, AKA Sasha, ALEXANDER KATCHALOFF, AKA Sealed Defendant 15, AKA Murushka, ANATOLY SHTEYNGROB, AKA Sealed Defendant 16, AKA Tony, ILYA ROZENFELD, AKA Sealed Defendant 17, PETER SKYLLAS, AKA Sealed Defendant 18, RONALD UY, AKA Sealed Defendant 19, NICHOLAS HIRSCH, AKA Sealed Defendant 20,

1

BRYAN ZURIFF, AKA Sealed Defendant 21, MOSHE ORATZ, AKA Sealed Defendant 22, KIRILL RAPOPORT, AKA Sealed Defendant 23, DAVID AARON, AKA Sealed Defendant 24, JUSTIN SMITH, AKA Sealed Defendant 25, ABRAHAM MOSSERI, AKA Sealed Defendant 26, WILLIAM EDLER, AKA Sealed Defendant 27, PETER FELDMAN, AKA Sealed Defendant 28, EUGENE TRINCHER, AKA Sealed Defendant 29, EDWIN TING, AKA Sealed Defendant 30, MOLLY BLOOM, AKA Sealed Defendant 31, WILLIAM BARBALAT, AKA Sealed Defendant 32, YUGESHWAR RAJKUMAR, AKA Sealed Defendant 33, JOSEPH MANCUSO, AKA Sealed Defendant 34, AKA Joe The Hammer,

*Defendants*,

VADIM TRINCHER, AKA Sealed Defendant 2, AKA Dima, ANATOLY GOLUBCHIK,

*Defendants-Appellants*.

------------------------------------------------------------------

| | |
|---|---|
| FOR APPELLANTS: | MARTIN G. WEINBERG (Kimberly Homan, *on the brief*), Martin G. Weinberg, P.C., Boston, MA, *for* Defendant-Appellant Vadim Trincher. |
| | MARC FERNICH (Jeffrey Lichtman, Law Offices of Jeffrey Lichtman, New York, NY *on the brief*), Law Office of Marc Fernich, New York, NY, *for* Defendant-Appellant Anatoly Golubchik. |
| FOR APPELLEE: | JOSHUA A. NAFTALIS, Assistant United States Attorney (Karl Metzner, Assistant United States Attorney, *of counsel*), *for* Preet Bharara, United States Attorney for the Southern District of New York, United States Attorney's Office for the Southern District of New York, New York, NY. |
| FOR AMICUS CURIAE: | Joshua L. Dratel, Law Offices of Joshua Dratel, P.C., New York, NY; Florian Miedel, Miedel & Mysliwiec LLP, New York, NY, *for the National Association of Criminal Defense Lawyers*, *as* amicus curiae *in support of Defendants-Appellants.* |

Appeal from judgments of the United States District Court for the Southern District of New York (Furman, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgments of the district court are **AFFIRMED**.

Defendants Vadim Trincher and Anatoly Golubchik appeal their sentences of 60 months' imprisonment[1] after they pleaded guilty, pursuant to plea agreements, to participating in a racketeering conspiracy in violation of 18 U.S.C. § 1962(d). The underlying predicate acts were operating an illegal gambling business in violation of 18 U.S.C. § 1955 and N.Y. Penal Law § 225.10 and participating in a money laundering conspiracy in violation of 18 U.S.C. § 1956(h).

From 2006 until approximately 2013, Golubchik and Trincher were members of the Taiwanchik-Trincher Organization. The organization operated under the protection of Alimzhan Tokhtakhounov, a member of a select group of high-level criminals from the former Soviet Union, who used threats of violence and economic harm to resolve disputes with clients of the Organization's high-stakes gambling operation. Trincher and Golubchik agreed to receive and place sports bets in New York City from wealthy individuals located primarily in Russia and Ukraine. They received the bets from brokers outside the United States and, in some instances, directly from the bettors themselves. The defendants then transferred the profits of the gambling operation to accounts in Cyprus using shell companies. The profits were later transferred to the United States. In total, Trincher and Golubchik laundered approximately $100 million in connection with these operations.

On appeal, Trincher and Golubchik argue that the Government breached its plea agreements and that the district court erred in upwardly departing from their sentencing ranges under the U.S. Sentencing Guidelines. Trincher further claims that the district court erred when it applied the Guidelines enhancement for being an organizer or leader of the criminal operation, U.S. Sentencing Guidelines Manual § 3B1.1(a) (2013), to calculate his Guidelines sentencing range. We assume the parties' familiarity with the underlying facts, to which we refer only as necessary to explain our decision.

1.    Breach of Plea Agreements

Trincher and Golubchik argue that the Government breached its plea agreements by (1) arguing for application of the leader or organizer enhancement when it referred to them as leaders of the Taiwanchik-Trincher Organization in its sentencing submission, and when it responded to the district court at sentencing that the enhancement could be properly applied, and (2) arguing that the Guidelines understated the seriousness of the defendants' offenses.[2]

The plea agreements contain the following provisions, as relevant to this appeal:

- "Based upon the calculations set forth above, the defendant's stipulated Guidelines range is 21 to 27 months' imprisonment (the 'Stipulated Guidelines Range').

- "The parties agree that neither a downward nor an upward

---

[1] Each defendant was also sentenced to three years' supervised release, a $100 special assessment, a $75,000 fine, and forfeiture of certain properties and interests constituting or derived from proceeds obtained from the offense.

[2] In its sentencing submissions, the Government advocated for above-Guidelines sentences "[u]nder the factors set forth in 18 U.S.C. § 3553(a)." Golubchik App'x 419; Trincher App'x 70.

departure from the Stipulated Guidelines Range of 21 to 27 months' imprisonment set forth above is warranted. Accordingly, neither party will seek any departure or adjustment pursuant to the Guidelines that is not set forth herein. Nor will either party suggest that the Probation Office consider such a departure or adjustment under the Guidelines, or suggest that the Court *sua sponte* consider any such departure or adjustment."

- "The parties agree that either party may seek a sentence outside of the Stipulated Guidelines Range of 21 to 27 months' imprisonment, suggest that the Probation Office consider a sentence outside of the Stipulated Guidelines Range, and suggest that the Court *sua sponte* consider a sentence outside of the Stipulated Guidelines Range, based upon the factors to be considered in imposing a sentence pursuant to Title 18, United States Code, Section 3553(a)."

- "[N]othing in this Agreement limits the right of the parties . . . to make any arguments . . . regarding the factors to be considered in imposing a sentence pursuant to Title 18, United States Code, Section 3553(a) . . . ."

- "It is understood that pursuant to U.S.S.G. § 6B1.4(d), neither the Probation Office nor the Court is bound by the above Guidelines stipulation, either as to questions of fact or as to the determination of the proper Guidelines to apply to the facts. In the event that the Probation Office or the Court contemplates any Guidelines adjustments, departures, or calculations different from those stipulated to above, or contemplates any sentence outside of the stipulated Guidelines range, the parties reserve the right to answer any inquiries and to make all appropriate arguments concerning the same."

Golubchik App'x 174, 175; Supp. App'x 5, 6.

We conclude that the Government's arguments did not breach these agreements. The plea agreements expressly permitted the Government to "seek a sentence outside of the Stipulated Guidelines Range . . . based upon the factors to be considered . . . pursuant to Title 18, United States Code, Section 3553(a)." Golubchik App'x 174; Supp. App'x 5. In its sentencing submissions, the Government described Trincher and Golubchik's roles as leaders of the criminal enterprise as a relevant consideration in weighing the need for their sentences to reflect the seriousness of their crimes, to afford adequate deterrence, and to protect the public – all of which are properly considered under 18 U.S.C. § 3553(a). The Government did not mention the leadership role enhancement in its submissions. Moreover, at sentencing, the Government only discussed the enhancement in response to inquiries from the court. Given that (1) the district court directed the

4

Government to address the applicability of the role enhancement, (2) the plea agreement provided that the Government could respond to the court's inquiries regarding "any Guidelines adjustments, departures, or calculations different from those stipulated to," Golubchik App'x 175; Supp. App'x 6, and (3) the Government emphasized at both sentencings that it was not advocating for application of the enhancement, we find that the Government's statements regarding the defendants' roles in the offense did not breach the plea agreements. *See United States v. Riera*, 298 F.3d 128, 134-36 (2d Cir. 2002) (finding no breach in light of the same three considerations); *see also United States v. Vaval*, 404 F.3d 144, 154 (2d Cir. 2005) ("[T]he government's letter [in *Riera*] served a useful purpose – as specifically permitted by the plea agreement, the provision of requested legal and factual information to the court – which is an essential function of the government at sentencing.").

The Government's argument that the Guidelines as applied in this case understated the seriousness of the offense likewise falls within the purview of permissible conduct under the plea agreement. Although this argument was not raised in response to an inquiry from the court, the fact that the Guidelines do not fully account for the seriousness of the offense is certainly a relevant factor to raise for consideration under 18 U.S.C. § 3553(a), as permitted by the plea agreement. *See United States v. Larkin*, 629 F.3d 177, 191-92 (3d Cir. 2010) (holding that the Government did not breach the plea agreement when, *inter alia*, it described factors that were "not considered by the guidelines but reflective of the seriousness of the offense" and construing those arguments as "made with respect to the non-guideline sentencing considerations set forth in 18 U.S.C. § 3553"). We therefore conclude that the Government did not breach the plea agreements in taking this position.

2.    Upward Departure

Trincher and Golubchik next argue that the district court erred in upwardly departing based on an "[u]nreasonable [d]isagreement" with the Guidelines. Trincher Br. 29. According to the defendants, a departure was not warranted here because this case falls within the "heartland" of conduct anticipated by the Guidelines. *Id.* at 33.

We need not reach these arguments, since the district court stated that the defendants' sentences would be the same regardless of whether the court decided to upwardly depart or to impose an upward variance based on the Section 3553(a) factors. Neither defendant has demonstrated that the district court abused its discretion in varying upward in this case, and therefore we may affirm the district court's judgments on this basis.

Were we to reach the argument, though, we would find no error in the district court's decision to upwardly depart. "We review the district court's decision to depart from the applicable Guideline range for abuse of discretion." *Riera*, 298 F.3d at 132. In doing so, we apply a three-part test:

> First, we determine whether the reasons articulated by the district court for the departure are of a kind or a degree that may be

appropriately relied upon to justify the departure. Second, we examine whether the findings of fact supporting the district court's reasoning are clearly erroneous. Finally, we review the departure for reasonableness, giving considerable deference to the district court.

*Id.*

Here, the district court found that the money laundering guidelines – which are incorporated by reference under the racketeering guidelines, *see* U.S. Sentencing Guidelines Manual § 2E1.1 & cmt. n.1 – understated the seriousness of the defendants' conduct in this case. Trincher and Golubchik obtained the funds that they laundered from gambling. The gambling Guidelines do not consider the amount of money gambled in calculating the base offense level. *See id.* § 2E3.1(a)(1). Accordingly, because the money laundering Guidelines calculate the base offense level for direct money launderers like Trincher and Golubchik (*i.e.*, those who launder the profits of their own criminal activities) based on the underlying offense, the amount of funds that were laundered was not taken into account in calculating their offense levels under the money laundering Guidelines. *See id.* § 2S1.1(a)(1); *id.* app. C, vol. II at 222 (2001), Amend. 634, Reason for Amendment. On the other hand, because the money laundering Guidelines calculate the base offense level for third party money launderers (*i.e.*, those who launder funds other than those obtained through their own criminal activity), co-defendants in this case who played a much smaller role by merely laundering some of the enterprise's profits without participating in the underlying gambling activities had higher Guidelines ranges than Golubchik and Trincher, who ran the gambling operation and were responsible for laundering approximately $100 million. *See id.* § 2S1.1(a)(2); *id.* app. C, vol. II at 222.

The district court observed that – as applied in this case – the Guidelines did not distinguish between "run-of-the-mill gambling cases and run-of-the-mill racketeering cases involving gambling, and cases like this one involving a massive, sophisticated gambling operation that spans continents and involves upwards of $100 million." Golubchik App'x 489; *see* Trincher App'x 210. Moreover, application of the Guidelines here would lead to disparities in the sentencing of Golubchik and Trincher as compared to their significantly-less culpable co-defendants. Accordingly, the court found that

> this case involves aggravating circumstances of a kind or to a degree not adequately taken into consideration by the sentencing commission, or to put it differently, [this] case is an atypical one, one to which the particular guideline linguistically applies, . . . but where the conduct significantly differs from the norm or heartland of cases, as the other defendants, for that matter, in this case, or many of the other defendants make clear.

Golubchik App'x 489-90; *see* Trincher App'x 209-11.

We find that this reasoning is "of a kind or a degree that may be appropriately relied upon to justify the departure," and that the facts of this case – which the defendants do not genuinely

dispute – support this reasoning. *See Riera*, 298 F.3d at 132; *see id.* ("A court may . . . depart vertically pursuant to § 5K2.0 if it 'finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described.'" (quoting U.S. Sentencing Guidelines Manual § 5K2.0(a)(1)(B))). The district court's decision to depart was not based on a categorical disagreement with the Guidelines, but rather with the anomalous outcomes that resulted from the application of the Guidelines in this particular case.[3] We also conclude that the extent of the district court's upward departure here was reasonable, particularly in light of the seriousness of the offense, the defendants' leadership roles, and the defendants' culpability relative to that of their co-defendants who were third party money launderers.

3.      Application of the Leadership Role Enhancement to Trincher

Trincher argues that the district erred in applying the enhancement for a leader or organizer to calculate his offense level under the Guidelines. *See* U.S. Sentencing Guidelines Manual § 3B1.1(a) ("If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase [the offense level] by 4 levels."). Trincher concedes that "there were more than five participants in the RICO enterprise" and that "he led/organized the bookies working for him in Ukraine." Trincher Br. 58. He argues, however, that "those bookies, all of whom conducted their activities solely in Russia or Ukraine and who were the only individuals the government showed that Trincher led/organized, were [not] 'criminally responsible'" – and therefore not "participants" in Trincher's criminal activity[4] – because their conduct occurred extraterritorially. *Id.*

---

[3] We reject the defendants' argument that the district court's departure here undermines the Sentencing Commission's intent as expressed in its 2001 amendments to the money laundering guidelines. To the contrary, the district court's sentence appears consistent with the Sentencing Commission's recognition that

> money laundering constitutes a serious national and international problem, and has consistently endorsed a sentencing structure that imposes substantial penalties for financial transactions which promote drug trafficking or other serious criminal activity or which obscure the origins of illicit funds. The Commission's focus in revising the money laundering sentencing guidelines was *never to lessen the penalties per se for such serious cases* but, rather, to recalibrate the penalties to the seriousness of the underlying offense.

U.S. Sentencing Comm'n, *Sentencing Policy for Money Laundering Offense, Including Comments on Department of Justice Report*, at 10 (1997) (emphasis added); *cf.* U.S. Sentencing Guidelines Manual app. C, vol. II at 222 ("This amendment is designed to promote proportionality by providing increased penalties for defendants who launder funds derived from *more serious underlying criminal conduct*, such as drug trafficking, crimes of violence, and fraud offenses that generate relatively high loss amounts, and decreased penalties for defendants who launder funds derived from less serious underlying criminal conduct, such as basic fraud offenses that generate relatively low loss amounts." (emphasis added)).

[4] "A 'participant' is a person who is criminally responsible for the commission of the offense, but need not have been convicted." U.S. Sentencing Guidelines Manual §3B1.1 cmt. n.1. "A person who is not criminally responsible for the commission of the offense (e.g., an undercover law enforcement officer) is not a participant." *Id.*

We reject the argument that the bookmakers whom Trincher concededly led are not "participants" within the meaning of the Guidelines. Trincher's bookmakers were responsible for passing bets to Trincher in New York, which he then received and placed in New York as part of a gambling operation and racketeering conspiracy that violated United States laws. The profits of these illegal activities were moved into the United States through shell companies, and then laundered through additional shell companies and seemingly legitimate investments in the United States. Given the bookmakers' ties to the criminal activity that took place in the United States, their participation in that activity may be considered for purposes of the enhancement. *See, e.g.*, *United States v. Dawn*, 129 F.3d 878, 885 (7th Cir. 1997) (affirming the district court's application of the Guidelines' cross-reference for production of child pornography when sentencing a defendant convicted of receipt and possession of child pornography because the defendant's "exploitation of minors in Honduras created the very pornography that he received and possessed here in the United States" and thus his "domestic offenses were the direct result of his relevant conduct abroad; pragmatically speaking, they are inextricable from one another"); *United States v. Farouil*, 124 F.3d 838, 844-45 (7th Cir. 1997) ("The first sentencing issue Farouil raises is whether the district court erred in attributing to him the drugs seized from Alexis when she was arrested in Belgium. . . . [T]here is no doubt that Farouil's traveling companion was carrying illegal drugs, and that these drugs were intended for transport into the United States. Nor is there any doubt that Alexis' actions were part of the same scheme to import heroin of which Farouil was convicted. By mere fortuity, Alexis was arrested in Belgium and Farouil was arrested in Chicago. . . . Her drugs were destined for distribution in the United States, just as Farouil's were. Alexis' crime was, therefore, directed against the United States . . . ."); *see also United States v. Zayas*, 758 F.3d 986, 989 (8th Cir. 2014) (noting agreement with the Seventh Circuit's approach in *Dawn*); *United States v. Castro-Valenzuela*, 304 F. App'x 986, 992 (3d Cir. 2008) (unpublished) (rejecting a similar extraterritoriality argument on the grounds that the defendant's "foreign conduct was used only to shed light on the gravity of his conduct as a transporter to make his sentence more individualized within the range"); *cf. United States v. Azeem*, 946 F.2d 13, 16 (2d Cir. 1991) ("[T]he [foreign drug] transaction should not have been included in the base offense level calculation because it was not a crime against the United States."). Accordingly, we find no error in the district court's decision to adopt the enhancement for a leader or organizer in calculating Trincher's Guidelines sentencing range.

We have considered the parties' remaining arguments and find them to be without merit. For the foregoing reasons, the judgments of the district court are **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court
